Case No. 25-cv-472-J

## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

DANIELLE ROSS, Individually and as Next of Kin to MARQUIEL D. ROSS, Deceased, and ESTATE OF MARQUIEL D. ROSS, *ex rel.,* RACHEL MACON, as Administrator,

Plaintiffs,

v.

STEVEN HARPE, individually; CHRISTIE QUICK, individually; KAMERON HARVANEK, individually ; BRITTANY CHASTANG, individually; CSO IV HAYES, individually; CSO IV KILLION, individually; CSM I MOONEY, individual; AGENTY TOMMY STANAHAN, individually; CHSA KIMBERLY HALL, individually; LPN ASHLEY BILLS, individually; CSO IV JUSTIN JORDAN, individually; CSO III DUSTIN HENRY, individually; CSM I DUSTIN WILLBANKS, individually; DEPUTY WARDEN NANCI BATTLES, individually; and JOHN AND JANE DOES 1-10, individually,

Defendants.

## DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

LAUREN RAY, OBA#22694
LEXIE P. NORWOOD, OBA#31414
Assistant Attorneys General
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21ˢᵗ Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 521-3921 | Facsimile: (405) 521-4518

*Attorneys for Defendants Director of ODOC Steven Harpe and ODOC Warden Christie Quick*

October 1, 2025

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES.................................................................................................ii

MOTION TO DISMISS AND BRIEF IN SUPPORT ......................................................... 1

BRIEF IN SUPPORT ......................................................................................................... 1

STATEMENT OF THE CASE ........................................................................................... 1

STANDARD OF REVIEW................................................................................................. 3

ARGUMENT AND AUTHORITY .................................................................................... 3

    PROPOSITION I: PLAINTIFFS FAIL TO STATE A CLAIM AGAINS
    DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES ................................... 3

    PROPOSITION II: PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE
    INDIFFERENCE ................................................................................................. 6

    PROPOSITION III: SUPERVISORY LIABILITY IS NOT AUTHORIZED UNDER §
    1983 ................................................................................................................... 9

    PROPOSITION IV: PLAINTIFFS FAIL TO STATE A CLAIM FOR FAILURE TO
    TRAIN.................................................................................................................. 9

    PROPOSITION V: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF
    DUE PROCESS UNDER THE FOURTEENTH AMENDMENT ..................... 10

    PROPOSITION VI: PLAINTIFFS FAIL TO STATE A CLAIM FOR CRUEL AND
    UNUSUAL PUNISHMENT................................................................................ 11

    PROPOSITION VII: DEFENDANTS ARE ENTITLED TO QUALIFIED
    IMMUNITY........................................................................................................ 13

    PROPOSITION VIII: DEFENDANTS ARE IMMUNE UNDER THE GTCA. ......... 15

    PROPOSITION IX: PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR
    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS......................... 18

    PROPOSITION X: PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES. . 19

CONCLUSION................................................................................................................. 20

CERTIFICATE OF SERVICE ......................................................................................... 20

i

## TABLE OF AUTHORITIES

**Cases** Page(s)

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................... 14

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................... 3, 4, 9, 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................... 3

*Bennet v. Passic*,
  545 F.2d 1260 (10th Cir. 1976) ..................................................... 4

*Burghart v. Corrections Corp. of America*,
  2009 OK CIV APP 76, 224 P.3d 1278 ........................................... 18

*Carswell v. Oklahoma State Univ.*,
  1999 OK 102, 995 P.2d 1118 ....................................................... 17

*Computer Publications, Inc. v. Welton*,
  2002 OK 50, 49 P.3d 732 ............................................................ 19

*Estelle v. Gamble*,
  429 U.S. 97 (1976) ....................................................................... 6

*Farmer v. Brennan*,
  511 U.S. 825 (1994) ............................................................. 6, 11, 12

*Fogarty v. Gallegos*,
  523 F.3d 1147 (10th Cir. 2008) ..................................................... 4

*Foote v. Spiegel*,
  118 F.3d 1416 (10th Cir. 1997) ..................................................... 4

*Fuller v. Odom*,
  741 P.2d 449 (Okla. 1987) ......................................................... 16

*Grimsley v. Mackay*,
  93 F.3d 676 (10th Cir. 1996) ........................................................ 4

*Gurley v. Memorial Hospital of Guymon*,
  1989 OK 34, 770 P.2d 573 ..................................................... 17, 18

*Hall v. Bellmon*,
   935 F.2d 1106 (10th Cir. 1991) ................................................................. 10

*Hannula v. City of Blakley*,
   907 F.2d 129 (10th Cir. 1990) ................................................................... 14

*Hudson v. Palmer*,
   468 U.S. 517 (1984) .................................................................................... 11

*Hunter v. Bryant*,
   502 U.S. 224 (1991) .................................................................................... 14

*Hurtado ex rel. Hurtado v. Smith*,
   119 F.4th 1233 (10th Cir. 2024) .............................................................. 6, 7

*Jenkins v. Wood*,
   81 F.3d 988 (10th Cir. 1996) ............................................................. 5, 9, 10

*Malley v. Briggs*,
   475 U.S. 335 (1986) .................................................................................... 15

*Meachum v. Fano*,
   427 U.S. 215 (1976) ...................................................................................... 7

*Medina v. City and County of Denver*,
   960 F.2d 1493 (10th Cir. 1992) ................................................................. 14

*Mitchell v. Forsyth*,
   472 U.S. 511 (1985) .................................................................................... 14

*Monell v. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978) ...................................................................................... 9

*Morris v. Noe*,
   672 F.3d 1185 (10th Cir. 2012) ................................................................. 14

*Mullenix v. Luna*,
   577 U.S. 7 (2015) ........................................................................................ 15

*Nail v. City of Henryetta*,
   911 P.2d 914 (Okla. 1996) ......................................................................... 16

*Ohio v. Harris*,
   489 U.S. 378 (1989) ...................................................................................... 9

*Olim v. Wakinekona*,
    461 U.S. 238 (1983) ...................................................................................... 7

*Pahls v. Thomas*,
    718 F.3d 1210 (10th Cir. 2013) .................................................................. 12

*Pearson v. Callahan*,
    555 U.S. 223 (2009) .................................................................................... 14

*Robbins v. State of Okla. et al.*,
    519 F.2d .................................................................................................... 10

*Robbins v. State of Okla. et al.*,
    519 F.3d 1242 (10th Cir. 2008) .................................................................... 5

*Rooks v. State ex rel. Okla. Corp. Comm'n*,
    1992 OK CIV APP 155 ................................................................................ 16

*Roska ex rel. Roska v. Peterson*,
    328 F.3d 1230 (10th Cir. 2003) .................................................................. 14

*Savage v. Fallin*,
    663 F. App'x 588 (10th Cir. 2016) ............................................................... 8

*Schneider v. City of Grand Junction Police Dep't*,
    717 F.3d 760 (10th Cir. 2013) .................................................................... 12

*Scott v. Hern*,
    216 F.3d 897 (10th Cir. 2000) ...................................................................... 7

*Serna v. Colorado Dept. of Corrections*,
    455 F.3d 1146 (10th Cir. 2006) .................................................................... 4

*Shauf v. Rios*,
    313 F. Supp. 3d 1262 (W.D. Okla. 2018) ...................................................... 8

*Smith v. U.S.*,
    561 F.3d 1090 (10th Cir. 2009) .................................................................... 3

*Tal v. Hogan*,
    453 F.3d 1244 (10th Cir. 2006) ................................................................ 1, 2

*Warren v. United States Specialty Sports Ass'n*,
    138 P.3d 580 (Okla. Civ. App. 2006) .......................................................... 19

*Wilson v. Seiter*,
  501 U.S. 294 (1991) ...........................................................................................12


**Statutes**

42 U.S.C. § 1983 ...................................................................................2, 9, 11, 13

Okla. Stat. tit. 21 § 540 ...........................................................................................1

Okla. Stat. tit. 21 § 1435 .........................................................................................2

Okla. Stat. tit. 47 § 4-103.........................................................................................1

Okla. Stat. tit. 51  § 157(B) ....................................................................................19

Okla. Stat. tit. 51 (2024), §§ 153, 156 ..................................................................19

§156 (C).................................................................................................................20

**Rules**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................1

Rule 8(a)(2) of the Federal Rules of Civil Procedure ...........................................

## MOTION TO DISMISS AND BRIEF IN SUPPORT

Defendants, Director of ODOC Steven Harpe ("Director Harpe") and ODOC Warden Christie Quick ("Warden Quick"), or collectively "Defendants," respectfully move to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6). In support of this Motion, Defendants state:[1]

## BRIEF IN SUPPORT
## STATEMENT OF THE CASE

This case involves a tragic course of events. Marquel Ross ("Ross"), was convicted of possession of a stolen vehicle in violation of OKLA. STAT. tit. 47 § 4-103 and obstructing an officer[2] in violation of OKLA. STAT. tit. 21 § 540 on December 20, 2019.[3] Ross was sentenced to two (2) years in the custody of the Oklahoma Department of Corrections ("ODOC"). *Id*. Although Ross' sentence was deferred, the deferral was revoked on August 17, 2020, when Ross failed to provide proof of residency, failed to maintain contact with supervision office and was considered an absconder, failed to provide proof of employment, and failed to pay supervision fees. *Id*. On January 6, 2022, a bench warrant was issued against Ross. *Id*. On January 9, 2023, Judge Keely found Ross guilty in Tulsa County Court Case No. CF-2019-2468 and accelerated his sentence to two years in ODOC custody to fully discharge the sentence. *Id*. Ross was received into ODOC on March 29,

---

[1] At the time of this filing, no other Defendants named in the Amended Complaint [Doc. 16] have been served.

[2] This is contrary to Plaintiffs' allegation that Ross' sentence was merely for "unknowingly accept[ing] a ride in a stolen vehicle." *See* [Doc. 16 at ¶16]. Courts may take judicial notice of facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006).

[3] *See State of Oklahoma v. Ross*, No. CF-2019-2468; Tulsa County District Court.

2023, to begin his two-year sentence, and remained there until his death on September 12, 2024.[4]

While housed at Oklahoma State Penitentiary ("OSP"), Ross was celled with another inmate, Justin Harris ("Harris"). Harris is currently serving a fifteen (15) year sentence at ODOC for pleading guilty to burglary in the second degree, in violation of OKLA. STAT. tit. 21 § 1435[5] on April 12, 2019.[6]

On September 12, 2024, Ross was found unresponsive in his cell and ultimately passed away [Doc. 11, p. 4]. Harris has been charged with murder in the first degree as a result of Ross' death, and his case was set for status conference on September 18, 2025.[7] The Court has also ordered a competency evaluation of inmate Harris. *Id.*

Plaintiffs now bring this lawsuit alleging the following claims under 42 U.S.C. § 1983 against Defendants in their individual capacities for: (1) deliberate indifference; (2) supervisory liability; (3) failure to train and supervise against Defendants in their individual and official capacities; (4) violation of due process for prolonged incarceration; and (5) cruel and unusual punishment under the Eighth and Fourteenth Amendments against Defendants in their individual capacities; (6) negligence; (7) wrongful death under 12 O.S.

---

[4]*See Offender Lookup information* for Marquiel Ross, ODOC #898181, available at https://okoffender.doc.ok.gov. Courts may take judicial notice of facts which are a matter of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n. 24 (10th Cir. 2006). The inmate information and the policies of ODOC are public records, available through the ODOC website.

[5]The Judgment and Sentence filed shows this crime to be a non-violent crime. *See State of Oklahoma v. Harris*, No. CF-2018-181; McCurtain County District Court.

[6]*See State of Oklahoma v. Harris*, No. CF-2018-181; McCurtain County District Court.

[7]*See State of Oklahoma v. Harris*, No. CF-2024-345; Pittsburg County District Court.

1053; (8) intentional infliction of emotional distress; and (9) negligent infliction of emotional distress. Plaintiffs seek only monetary relief. For the reasons listed below, this case should be dismissed.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In applying this standard, the court must "accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[; and, t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT AND AUTHORITY

## PROPOSITION I: PLAINTIFFS FAIL TO STATE A CLAIM AGAINST DEFENDANTS IN THEIR INDIVIDUAL CAPACITIES.

Plaintiffs allege Defendants violated Ross' constitutional rights, specifically his Eighth and Fourteenth Amendment rights, when, among other things, Ross was denied timely release and was ultimately killed by his cell mate [Doc. 16 at ¶58]. However, Plaintiffs fail to allege Defendants personally engaged in any activity which resulted in a

constitutional violation. Defendants are merely named in this case due to their various supervisory roles at ODOC (i.e., Harpe in his role as the Director of ODOC, and Quick in her role as Warden of OSP). Generally, "[i]ndividual liability under [42 U.S.C.] § 1983 must be passed on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. Mackay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennet v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (Personal participation is an essential allegation in a Section 1983 claim." (citations omitted)); *see also Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.") (internal quotation marks omitted). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution. *Aschcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151-52 (10th Cir. 2006). Government officials have no vicarious liability in a Section 1983 suit for the misconduct of their subordinates, such as prison staff, because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). In other words, Section 1983 does not authorize liability under a theory of *respondeat superior*.

Similarly, to survive a motion to dismiss, it is important "the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him…, as distinguished from collective

allegations against [defendants as a group]." *Robbins v. State of Okla. et al.,* 519 F.3d 1242, 1250 (10th Cir. 2008). Plaintiffs' claims must fail because Plaintiffs have failed to allege any Defendant personally participated in any constitutional violation against Ross. Plaintiffs' Complaint is completely devoid of any specific allegations of conduct or actions taken by any of the named Defendants. Plaintiffs simply state generic and conclusory allegations, lumping all Defendants together and including unnamed individuals:

> Defendants…, as well as John and Jane Doe Defendants, acting under color of state law, violated Mr. Ross' constitutional rights under the Eighth and Fourteenth Amendments by exhibiting deliberate indifference to Ross' health, safety, and due process rights [Doc. 16 at ¶63];

> ODOC failed to provide any documentation or credible explanation for the transfer of Ross… *Id*. at ¶ 37;

> ODOC, unlawfully and without explanation, detained Ross far beyond ODOC's official discharge date… *Id*. at 33¶;

> Defendants "knew or should have known" about the significant risks of housing… Ross with…Harris… *Id*. at ¶ 24;

> ODOC staff's actions demonstrated deliberate indifference to Mr. Ross' health and safety. *Id*. at ¶ 23; and

> The "sudden decision (to move Ross to Big Mac [OSP] rather than [a different facility] was made by one or more of the Does as a retaliatory measure… *Id*. at ¶ 15.

Plaintiffs never identify any individual Defendant as taking any particular action or inaction as it is alleged to have resulted in Ross' death. Nor are Defendants alleged to be present at the time of Ross' death. There are no allegations that Defendants knew Ross was in danger from his cellmate, nor is there any allegation Defendants witnessed any altercation between Ross and his cellmate. Defendants cannot reasonably be expected to identify any claims against them which supposedly gives rise to any constitutional liability,

thereby making Plaintiffs' Amended Complaint subject to dismissal under Rule 8(a)(2) of the Federal Rules of Civil Procedure.

## PROPOSITION II: PLAINTIFFS FAIL TO STATE A CLAIM FOR DELIBERATE INDIFFERENCE.

The Eighth Amendment, applied to the states by the Fourteenth Amendment, proscribes cruel and unusual punishment, including "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-105. These claims "must satisfy both an objective and a subjective component." *Hurtado ex rel. Hurtado v. Smith*, 119 F.4th 1233, 1236 (10th Cir. 2024) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Additionally, "a plaintiff must allege factual causation – i.e. 'but for' causation – in order to state a claim under § 1983." *Scott v. Hern*, 216 F.3d 897, 911 (10th Cir. 2000).

"Under the objective component, the alleged deprivation must be 'sufficiently serious' and pose 'a substantial risk of serious harm.'" *Hurtado*, 119 F.4th at 1236 (quoting *Farmer*, 511 U.S. at 834). "Under the subjective component, the official must have a 'sufficiently culpable state of mind.' *Id*. The official must 'know [] of and disregard [] an excessive risk to inmate health or safety. *Id*. at 837… This standard 'follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Id*. at 1236-1237. Here, Plaintiffs are challenging (1) Ross' transfer from minimum-security to maximum-security, (2) failing to act on knowledge of threats to Ross'

safety, and (3) failing to perform adequate checks. However, Plaintiffs provide no facts that would indicate these Defendants were aware of any threats to Ross' safety. Plaintiffs make generic claims that each knew or should have known of threats, without any facts to support.

In addition, an inmate has no justifiable expectation that he will be incarcerated in any particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). In fact, the Supreme Court stated:

> The Constitution does not… guarantee that a convicted prisoner will be placed in any particular prison… The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any of* its prisons…
>
> That life in one prison is much more disagreeable than in another does not in itself signify that a Fourteenth Amendment liberty interest is implicated when a prisoner is transferred to the institution with more severe rules.

*Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) (emphasis in original).

Plaintiffs' deliberate indifference claim is merely an impermissible *respondeat superior* claim. Director Harpe is being sued simply for being the Director of ODOC. Warden Quick is being sued simply for being Warden of OSP. Nothing in Plaintiffs' allegations shows Director Harpe or Warden Quick knew of and disregarded any risk to Ross' safety. Plaintiffs' Amended Complaint states that "one or more Does inexplicably decided to transfer Ross from the lowest level security level, not to LARC, but directly to [OSP]." [Doc. No. 16 at ¶14]. This "sudden decision" was made not by any Defendants, but "was made by one or more of the Does as a retaliatory measure to punish Ross for unknown personal animus." *Id.* at ¶15. Ross was then killed by his cellmate. *Id.* at ¶17. Plaintiffs then allege that various ODOC employees discovered Ross in his cell and that

"ODOC staff's actions demonstrated deliberate indifference…" *Id* at ¶23. Plaintiffs further allege that ODOC failed to inform the family of the death, and authorized cremation without approval. *Id.* at ¶¶26-42.

The only allegations against Defendants are due to their positions at ODOC. Plaintiffs' Amended Complaint alleges:

> "[t]he culture that allows rogue punishments is well known to, and tacitly, if not expressly, approved by executives at the highest level of the ODOC, including, without limitation, by Defendants Harpe and one or more of the Does." [Doc. 16 at ¶15].

> Defendant Quick, as Warden of OSP, acted under color of law…and endorsed a long-standing practice within her facility of intentionally housing inmates who filed complaints or were deemed problematic with known violent offenders as a punitive measure. *Id.* at ¶ 50.

However, a "[p]laintiff must accompany his conclusory phrase 'knew or should have known' with facts…that make deliberate indifference 'plausible.'" *Shauf v. Rios*, 313 F. Supp. 3d 1262, 1269 (W.D. Okla. 2018). Here, Plaintiff offers no facts to show deliberate indifference on behalf of Defendants, instead relying on their respective roles to claim they "knew" or "should have known" without more.  As such, any claim for deliberate difference against Defendants should be dismissed.

Plaintiffs also appear to allege deliberate indifference due to overcrowding at ODOC's prisons. However, Plaintiffs' Amended Complaint fails to support any such claim. Plaintiff relies on conclusory statements that ODOC, including OSP, were significantly understaffed [Doc. 16 at ¶46]. However, this statement alone is not enough. Plaintiffs must show a Defendant "acted or failed to act despite his knowledge of a substantial risk of serious harm." *Savage v. Fallin,* 663 F. App'x 588, 593 (10th Cir. 2016).

Furthermore, "because §   does not impose vicarious liability, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution.'" *Id*, citing *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. Plaintiffs claim Defendant Harpe knew of this risk because he sought funding for more correctional staff. [Doc. 16 at ¶47]. Requesting funding does not show failure to act despite a knowledge of a substantial risk of serious harm; instead it is a normal job function of a prison Director. Plaintiffs are relying solely on Harpe's role at ODOC for liability, which is not permissible under § 1983. As Plaintiffs have not pled deliberate indifference, those claims must be dismissed.

**PROPOSITION III: SUPERVISORY LIABILITY IS NOT AUTHORIZED UNDER § 1983.**

Plaintiffs bring Count II, named "Supervisory Liability," against Defendants in "Supervisory Roles." However, as explained in more detail above, 42 U.S.C. § 1983 does not authorize liability under a theory of *respondeat superior*. *See Jenkins*, 81 F.3d at 994; *see supra* at Prop. II. Additionally, Plaintiffs cannot show any personal participation by any named Defendants corresponding to any alleged violation of constitutional rights. As Plaintiffs cannot show personal participation by these named Defendants, Count II of Plaintiffs' Amended Complaint must be dismissed.

**PROPOSITION IV: PLAINTIFFS FAIL TO STATE A CLAIM FOR FAILURE TO TRAIN.**

In Count III, Plaintiffs attempt to hold Defendants liable for failure to train and supervise correctional staff adequately. Plaintiffs cite *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989) and *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Id*. However,

those cases apply to municipal liability, which is inapplicable here. In order for a § 1983 plaintiff to prevail on an official capacity claim for failure to train or supervise, he must prove "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers…can reasonably be said to have been deliberately indifferent to the need for additional training." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Plaintiffs point to no policy, practice or custom at issue that they allege led to any constitutional violation. Instead, Plaintiffs generically allege to a "longstanding practice" of housing inmates with known violent offenders without any facts to support. Such conclusory allegations are not sufficient to state a claim under the Federal rules.

Furthermore, Plaintiffs provide only conclusory allegations that these supervisory Defendants were actually aware of deficiencies and failed to take corrective action. Conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). As such, any claim premised on failure to train and supervise should be dismissed.

**PROPOSITION V: PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT.**

In Count IV, Plaintiffs allege Ross was held beyond his legal release date in violation of his due process rights under the Fourteenth Amendment. Plaintiffs again fail to state personal participation on behalf of any of the Defendants. Under *Robbins*, Plaintiffs must make clear which Defendant is accused of doing what action. *Robbins v. State of Okla. et al.*, 519 F.2d . Instead, Plaintiffs make conclusory statements such as "Defendants

10

unlawfully held Ross…"; "Defendants intentionally or recklessly falsified, manipulated, or failed to correct ODOC records…"; "Defendants failed to provide Mr. Ross with meaningful procedural protections…" [Doc 16 at ¶¶ 94-96]. Plaintiffs also make generic claims that Harpe had knowledge of inmates being unlawfully detained but has provided no facts showing Harpe had actual knowledge of Ross being unlawfully detained  .   For Quick, Plaintiffs only allege she "should have known" through her "supervisory role." [Doc. 16. at ¶98]. There are no allegations Harpe or Quick personally participated in any prolonged incarceration. As such, Plaintiffs failed to state a claim for a due process violation regarding the alleged over-detention.

### PROPOSITION VI: PLAINTIFFS FAIL TO STATE A CLAIM FOR CRUEL AND UNUSUAL PUNISHMENT.

Plaintiffs bring an Eighth Amendment violation claim pursuant to 42 U.S.C. § 1983 for cruel and unusual punishment by "intentionally, recklessly, or with deliberate indifference failing to protect him from known risks of severe harm during his incarceration." Specifically, Plaintiffs allege "Defendants" failed to ensure adequate inmate classification, placing Ross with a violent offender. "[I]n its prohibition of 'cruel and unusual punishments' the Eighth Amendment places restraints on prison officials, who…must provide humane conditions of confinement; [they] must… 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

To allege a plausible Eighth Amendment failure-to-protect claim, Plaintiffs must satisfy three elements: (1) objective harm, (2) a culpable state of mind, and (3) an "affirmative link" between a prison official's conduct and the constitutional violation.

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013). "Prisons are necessarily dangerous places." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To show a "sufficiently serious" constitutional deprivation, Plaintiffs must plead facts establishing he was "incarcerated under conditions posing a substantial risk of serious harm." *Id*. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

The requirement to show a culpable state of mind is subjective and requires an official's "deliberate indifference" to inmate health or safety. *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. 294 at 302-03). "[T]he official must both be aware of facts from which the indifference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. Plaintiffs have not shown any of the named defendants had the requisite, culpable state of mind.

In addition, to show an "affirmative link" between the official's conduct and the constitutional violation, liability must "be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)). As stated above, § 1983 does not authorize liability under a theory of *respondeat superior*. The "affirmative link between the supervisor and the constitutional violation" requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct." *Schneider*, 717 F.3d at 767 (quoting *Iqbal*, 556 U.S. at 677)).

Plaintiffs do not plead a plausible Eighth Amendment claim against Director Harpe or Warden Quick. Plaintiffs' Amended Complaint is full of conclusory statements that

Defendants knew, or should have known, that placing Ross with Harris would lead to violence. However, Plaintiffs have provided no facts to support their allegations.

Based upon Plaintiffs' allegations, any personal involvement by Director Harpe or Warden Quick. is disguised here as a *respondeat superior* claim which, again, is not recognized under 42 U.S.C. § 1983. Plaintiffs do not claim any of these individuals personally caused harm to Ross, either by ordering an official's conduct or developing a policy that they knew was likely to cause such harm. Because Plaintiffs fail to show any of these individuals were deliberately indifferent to Ross' health or safety and that there is no affirmative link between their conduct and the alleged constitutional violation, these claims should be dismissed.

Additionally, Plaintiffs' Amended Complaint is devoid of any facts showing either Defendant had any knowledge of any requests for protection from Ross other than a conclusionary statement that they "disregarded" such requests [Doc. 16 at ¶24]. Such conclusory statements cannot serve as the basis for deliberate indifference.

Finally, Plaintiffs' Amended Complaint makes it clear that any transfer of Ross was made by an unnamed "Doe" and not by any of these Defendants. *Id.* at ¶¶ 14, 15. There are no facts showing that these Defendants knew Ross as an ODOC inmate, must less that he was being transferred to a dangerous situation and were deliberately indifferent. Plaintiffs' Amended Complaint fails to state a claim for cruel and unusual punishment.

**PROPOSITION VII: DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.**

A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to

have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). Such immunity is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248 (citations and quotations omitted).

Thus, if the plaintiff has alleged a constitutional violation and has met his burden to establish that the law on the subject is clearly established, the plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id.* at 341.

*Id.* at 1251.

In *Mullenix v. Luna*, 577 U.S. 7 (2015), the Supreme Court reiterated that the question of qualified immunity turns on whether the unconstitutionality of "particular conduct" in a "specific context" is clearly established. *Id.* at 11-12. The Supreme Court also reiterated that clearly established law should not be defined at a high level of generality. *Id.*

As more fully set forth above, Plaintiffs cannot meet their burden of demonstrating that any of the named Defendants violated Ross' constitutional rights. Therefore, Defendants are entitled to qualified immunity.

**PROPOSITION VIII: DEFENDANTS ARE IMMUNE UNDER THE GTCA.**

In Counts 6, 7, and 9, Plaintiffs allege various torts against Defendants. However, Defendants cannot be individually liable under the Governmental Tort Claims Act ("GTCA") for torts, as a suit against employees acting within the scope of their employment is treated as a suit against the State under the GTCA.

Prior to the enactment of the GTCA, 51 O.S. § 151 *et seq*., the State of Oklahoma and all its agencies enjoyed common law sovereign immunity from tort liability. The GTCA sets forth the precise extent to which the State is no longer immune. Section 152.1 of the GTCA provides that the State of Oklahoma adopts the doctrine of sovereign immunity, and that the state and all of its employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts. *Id.* at § 152.1(A). Section 152.1(B) effectuated an express partial waiver of the State's sovereign immunity "*only to the extent and in the manner provided*" by the GTCA (emphasis added). There is a presumption of immunity for state employees. See *Rooks v. State ex rel. Okla. Corp. Comm'n*, 1992 OK CIV APP 155, 6 and 10, 842 P.2d 773, 777.

The State and its employees' tort liability is exclusively governed by the GTCA. 51 O.S. § 153(B). The GTCA is the exclusive remedy against a governmental entity in this state for the recovery of damages for the tortious acts of its employees. *Fuller v. Odom,* 741 P.2d 449, 452 (Okla. 1987). Pursuant to the GTCA, employees acting within the scope of their employment are immune from liability for torts. *See* 51 O.S. §§ 152.1(a), 153(A), and 163(c). "Scope of employment" is defined as "performance by an employee acting in good faith within the duties of the employee's office of employment . . . ." 51 O.S. § 152(12). An employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken by the employer. *Nail v. City of Henryetta*, 911 P.2d 914, 917-918 (Okla. 1996). Actions that are "fairly and naturally incident to the business," and are done "while

the servant was engaged upon the master's business and be done, although mistakenly or ill advised, with a view to further the master's interest" are within the scope of employment. *Id.* State employees are presumed to be immune from claims such as this. Without such immunity, there would be no safeguard for State decision-makers in carrying out their duties, and the fear of exposure to litigation and liability would detract therefrom.

If an employee acts within the scope of his or her employment at the time of the act or omission which is the basis for the claim, then he or she is acting on behalf of the State. See *Carswell v. Oklahoma State Univ.,* 1999 OK 102, ¶ 4, 995 P.2d 1118, 1120, as corrected (Jan. 4, 2000), (finding state employees to be properly dismissed from suit where the plaintiff did not present any factual or legal grounds to support her argument (in response to the State's motion) that the employees acted maliciously or in bad faith). Here, there is no allegation that Defendants were acting outside the scope of their employment at any time. In fact, the Amended Complaint makes it clear that, at all times, Defendants were acting in the scope of their employment as any actions were taken in their various roles as ODOC employees. All actions alleged taken by Defendants were "fairly and naturally incident to the business" of ODOC. As such, Defendants cannot be liable under the GTCA.

Since Defendants were always acting within the scope of their employment, Plaintiffs were required to comply with the GTCA. To successfully bring a tort claim against the State of Oklahoma or one of its agencies, such as ODOC, an individual must comply with the notice and commencement provisions of the GTCA. OKLA. STAT. tit. 51 (2024), §§ 153, 156; *Gurley v. Memorial Hospital of Guymon,* 1989 OK 34, ¶ 6, 770 P.2d 573, 576 (noting that the GTCA "narrowly structures the method for bringing a tort claim

against a political subdivision."). Notice is a central component of the GTCA. OKLA. STAT. tit. 51 § 157(B) ("No action for any cause arising under this act . . . shall be maintained unless valid notice has been given[.]"); *Burghart v. Corrections Corp. of America,* 2009 OK CIV APP 76, ¶¶ 11-13, 224 P.3d 1278, 1281-82 (holding that the district court did not have jurisdiction over plaintiff's tort claim due to the failure to comply with the notice provisions of the GTCA). "Compliance with notice of claim provisions has been interpreted to be either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention." *Gurley*, 770 P.2d at 576. Plaintiffs' Amended Complaint does not allege compliance with the GTCA prior to initiating this lawsuit.[8] Therefore, Plaintiffs' claims under Oklahoma state law must be dismissed.

## PROPOSITION IX: PLAINTIFFS HAVE FAILED TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Count 8, Plaintiffs allege intentional infliction of emotional distress based on the following conduct:

> (a) Not notifying Danielle Ross of her son's death until a week after his passing;
> (b) Providing misleading and conflicting information regarding his death, including altering his discharge date; and
> (c) Attempting to cremate Ross's body without proper consent [Doc. 16 at ¶134].

To state a claim for intentional infliction of emotional distress, a plaintiff must show: "(1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff to suffer

---

[8] In fact, Plaintiff failed to comply with the notice provision of the GTCA. 51 O.S. §156 (C).

emotional distress; and (4) the plaintiff's emotional distress was severe. "To ensure that only valid claims reach a jury, a trial court must initially act as a gatekeeper to determine if an alleged tortfeasor's conduct is sufficiently extreme and outrageous and if the plaintiff suffered severe emotional distress." *Warren v. United States Specialty Sports Ass'n*, 138 P.3d 580, 585 (Okla. Civ. App. 2006). In general, a plaintiff must show that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and lead the listener to exclaim, "Outrageous!" *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 9, 49 P.3d 732, 735.

The actions complained of by Plaintiffs were not taken by Defendants. Instead, Plaintiffs specifically allege these actions were carried out by unnamed individuals: "ODOC falsely claimed Ross died on September 17, 2024," *Id*. at ¶31; "ODOC repeatedly altered Ross's release date…," *Id.* at ¶32; "ODOC provided conflicting information...," *Id.* at ¶26, "ODOC …authorized the cremation of Ross's body." *Id.* at ¶28. Plaintiff has cited no facts showing any action on behalf of Defendants that would give rise to a claim of intentional infliction of emotional distress. Plaintiffs' claims must be dismissed.

**PROPOSITION X: PLAINTIFF IS NOT ENTITLED TO PUNITIVE DAMAGES.**

Plaintiffs are plainly prohibited under the GTCA from obtaining an award of punitive damages against the State of Oklahoma, including its employees acting within the scope of their employment. Section 154(C) of the GTCA mandates: "No award for damages in an action or any claim against the state or a political subdivision shall include punitive or exemplary damages." 51 O.S. § 154(C).

## CONCLUSION

For the reasons stated above, Defendants respectfully request this Court grant their Motion to Dismiss and for any other relief deemed just and proper by the Court.

Respectfully submitted,

*s/ Lauren Ray*
**LAUREN RAY, OBA# 22694**
**LEXIE P. NORWOOD, OBA# 31414**
OKLAHOMA ATTORNEY GENERAL'S OFFICE
313 NE 21st Street
Oklahoma City, OK 73105
T: (405) 521-3921 | F:(405) 521-4518
lauren.ray@oag.ok.gov
lexie.norwood@oag.ok.gov
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day October, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing. I further that a true and correct copy of the foregoing document was sent to all counsel of record who are registered ECF participants.

*s/ Lauren Ray*
Lauren Ray