UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF OKLAHOMA

DANIELLE ROSS, individually and as next )
of kin to MARQUIEL D. ROSS, deceased, and )
ESTATE OF MARQUIEL D. ROSS, ex rel., )
RACHEL MACON, as Administrator, )
                                      Plaintiffs, )
                                      )
v. ) Case No. CIV-25-472-J
                                      )
STEVEN HARPE, in his individual and official )
capacities as Director of the Oklahoma )
Department of Corrections, et al., )
                                      )
                      Defendants. )

**ORDER**

In response to Marquiel D. Ross (Ross)'s death at the Oklahoma State Penitentiary (OSP), Plaintiffs filed suit under 42 U.S.C. § 1983 and state law. Relevant here, Plaintiffs sue Steven Harpe, then-Oklahoma Department of Corrections (ODOC) Director,[1] and Christe Quick, the OSP Warden. (Amend. Compl.) [Doc. No. 16]. Defendants Harpe and Quick have moved for dismissal (Defs.' Mot.) [Doc. No. 18] and Plaintiffs have responded (Pls.' Resp.) [Doc. No. 21]. For the reasons discussed below, Defendants' motion is GRANTED IN PART and DENIED IN PART.

**I.**    **Background**

Construing the well-plead allegations in the Amended Complaint as true, *see infra* at 3, Ross was incarcerated within ODOC on a non-violent offense. In November 2023, he was transferred from a minimum-security facility to OSP – a maximum-security facility – and was held past his release date (November 19, 2023) without cause. Then on September 11, 2024, Ross was placed in a cell with Justin Harris (Harris), a known violent offender with a documented history of

---

[1] The Court judicially notices that Mr. Harpe resigned from ODOC effective September 30, 2025.

dangerous behavior. The next day, on September 12, 2024, Ross was found dead in his cell. Harris has been charged with Ross's murder.

Plaintiffs name Defendant Harpe in his individual capacity and allege he (1) was deliberately indifferent to understaffing issues within ODOC; (2) failed to train, supervise, and control staff; (3) violated Ross's due process rights through prolonged detention and failure to cure ODOC errors leading to Ross's prolonged incarceration; (4) was deliberately indifferent in failing to protect Ross from a violent offender and failing to cure classification errors, understaffing issues, and retaliatory placements within ODOC; (5) was negligent in housing Ross with a violent offender, ignoring the danger, and failing to intervene; (6) is liable for wrongful death in failing to protect Ross, failing to properly supervise staff, and disregarding protocols; (7) caused intentional infliction of emotional distress related to the handling of Ross's remains and communication with the family; and (8) caused negligent infliction of emotional distress based on the same conduct.

Defendant Quick is also named in her individual capacity. Plaintiffs allege she (1) was deliberately indifferent in (a) housing Ross with a violent offender, (b) failing to protect Ross from Harris, and (c) failing to cure known risks due to inadequate classification procedures, understaffing issues, and retaliatory placements; (2) failed to train and supervise staff; (3) knew or should have known that Ross was being illegally detained past his release date; (4) was negligent in housing Ross with a violent offender, ignoring the danger, and failing to intervene to protect Ross; (5) is liable for wrongful death related to her failure to protect Ross, properly supervise staff, and follow protocols after Ross's death; (6) caused intentional infliction of emotional distress

related to the handling of Ross's remains and communication with the family; and (7) caused negligent infliction of emotional distress based on the same conduct.²

## II.     Standard for Review

Defendants seek dismissal under Federal Rules of Civil Procedure 12(b)(6), which requires the Court to determine if the Amended Complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  The Court must construe the allegations in the Amended Complaint in the light most favorable to Plaintiffs.  *See Buckley Constr., Inc. v. Shawnee Civil and Cultural Dev. Auth.*, 933 F.2d 853, 855 (10th Cir. 1991).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim for relief.  *Iqbal*, 556 U.S. at 678.  "An allegation is conclusory where it states an inference without stating underlying facts or is devoid of any factual enhancement."  *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

Although they do not cite it, Defendants' request for dismissal related to the Oklahoma Governmental Tort Claims Act (OGTCA) relies on a Rule 12(b)(1) facial attack.³  Thus, the Court applies "a standard patterned on Rule 12(b)(6) and assume[s] the truthfulness of the facts alleged." *Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 865 (10th Cir. 2019).

---

² Plaintiffs' allegations against Defendants Harpe and Quick span nine counts and are often repetitive.  The Court has condensed the allegations.

³ A facial attack challenges a complaint's sufficiency rather than the facts alleged within.  *See Paper, Allied-Indus., Chem. And Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1292 (10th Cir. 2005).  Conversely, a factual attack goes beyond the allegations in a complaint and challenges the facts upon which subject matter jurisdiction depends.  *See id.*

### III. <u>Analysis</u>

#### A.     **Plaintiffs' § 1983 Claims**

While Defendants do not admit that any constitutional violations occurred, neither do they seek dismissal on grounds that Plaintiffs failed to state an underlying Eighth Amendment or due process claim. Instead, they argue that Plaintiffs failed to state valid claims for relief against Defendants Harpe and/or Quick in their individual capacities. Thus, the Court assumes, for purposes of this motion only, that Ross's placement in Harris's cell and his (allegedly) ignored requests for protection violated the Eighth Amendment and his (allegedly) prolonged incarceration violated his due process rights.

To succeed on the individual capacity claims, Plaintiffs must allege sufficient facts to show an "affirmative link" between the alleged violations and Defendants Harpe and/or Quick's "personal participation, . . . exercise of control or direction, or . . . failure to supervise [or train]." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

#### 1.     **Personal Participation**

Plaintiffs allege that Defendants Harpe and Quick violated the Eighth Amendment when they housed Ross with a violent offender and then failed to act when he requested protection. *See* Amend. Compl. at 10, 17-19.[4] Defendants seek dismissal because the Amended Complaint "is full of conclusory statements that Defendants knew or should have known[] that placing Ross with Harris would lead to violence," but is "devoid of any facts showing either Defendant had any knowledge of any requests for protection from Ross," and Plaintiffs fail to allege that either Defendant Harpe or Quick personally ordered Ross's placement in Harris's cell. Defs.' Mot. at 18-19. The Court GRANTS the motion in part and DENIES the motion in part.

---

[4] All page citations refer to this Court's CM/ECF pagination.

4

### a. Eighth Amendment Claims

#### i. Eighth Amendment Standard

"A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (cleaned up). However, "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

#### ii. Ross's Placement with Harris

To the extent that Plaintiffs seek to establish personal liability against Defendant Harpe for Ross's placement in a cell with Harris, the Court GRANTS Defendants' motion to dismiss. The Court agrees that Plaintiffs have failed to sufficiently allege that Defendant Harpe directed Ross's placement with Harris, knew that Ross was a nonviolent offender, knew that Harris was a violent offender, and/or knew (before Ross allegedly sought protection) that OSP officials had placed Ross in Harris's cell. *See* Amend. Compl., *passim*. As such, Plaintiffs have not stated a valid claim that Defendant Harpe knew of and disregarded an excessive risk to Ross's health or safety at the time he was placed in Harris's cell.

The Court finds otherwise as to Defendant Quick. According to Plaintiffs, Defendant Quick "intentionally authorized or permitted" Ross's placement in Harris's cell "despite direct knowledge of Harris's violent history." Amend. Compl. at 10; *see also id.* at 8 (alleging Defendant Quick "allowed Mr. Ross's placement in a cell with inmate Justin Harris, an enormous inmate known for having a violent history towards other inmates, and particularly as to his prior cellmates"). Taking these allegations as true, and construing them in Plaintiffs' favor, the Court

5

finds they have stated a valid claim that Defendant Quick knew Ross was being placed in Harris's cell and was deliberately indifferent to Ross's health and safety. Accordingly, Defendants' motion to dismiss Defendant Quick is DENIED.

### iii. Ross's Request for Protection

Defendants also believe that the Amended Complaint lacks sufficient facts to show that Ross requested protection from either Defendant Harpe or Quick. *See* Defs.' Mot. at 19. But again, the Court must construe the allegations in Plaintiffs' favor and accept them as true. *See supra* at 3. With that construction, the Court finds Plaintiffs' allegations sufficient. That is, Plaintiffs allege Defendant Quick was "directly informed . . . about Ross's repeated requests for protection," and "intentionally ignored or recklessly disregarded Ross's explicit and credible requests for protection." Amend. Compl. at 9, 18. Likewise, Defendant Harpe is alleged to have "disregarded Ross's requests for protection and safety concerns." *Id.* at 5. Construed in Plaintiffs' favor, these facts suggest that if Ross's requests were ignored, they had been made. Thus, dismissal is DENIED on this ground.

### b. Due Process Claim

Defendants also seek dismissal on Plaintiffs' due process claim, related to Ross's alleged prolonged detainment, for lack of personal participation. *See* Defs.' Mot. at 16-17. This portion of Defendants' motion is also GRANTED IN PART and DENIED IN PART.

The motion is DENIED as to Defendant Harpe, as Plaintiffs allege that he had "direct knowledge" that Ross was being held unlawfully. Amend. Compl. at 16. However, for Defendant Quick, Plaintiffs allege only that she "knew or should have known" through her "supervisory role[] and routine inmate-record reviews" that Ross was being detained illegally. *Id.* This allegation is insufficient to state a valid claim against Defendant Quick based on her personal conduct. *See*

*Barnett v. Hamilton*, No. CIV-24-790-J, 2025 WL 2622349, at *8 (W.D. Okla. May 9, 2025) ("Conclusory allegations that [the Warden] 'knew or should have known' of the alleged incidents is insufficient to show . . . liability." (cleaned up)), *adopted*, 2025 WL 2389450 (W.D. Okla. Aug. 18, 2025).

### 2.     Exercise of Control or Direction

Plaintiffs also seek to hold Defendants liable for their exercise of control or direction over ODOC/OSP customs, procedures, etc.  Like above, the Court GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

To the extent either Defendant Harpe or Quick were not directly involved in the alleged wrongdoing, they can still be liable under § 1983 if Plaintiffs show they "(1) promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). The policy or custom can be informal, but must constitute a "widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1145 (10th Cir. 2023) (citation omitted).

#### a.     Defendant Harpe

For Defendant Harpe, Plaintiffs allege that the ODOC Director "tacitly, if not expressly, approved" of a culture that allowed retaliatory inmate placements.  Amend. Compl. at 3, 18.  The Court agrees with Defendants that this allegation, without additional factual support, is insufficient to state a valid claim that Defendant Harpe personally knew about such a custom and deliberately

disregarded an excessive risk to inmate health or safety. As such, this claim is DISMISSED without prejudice.

Plaintiffs also seek to hold Defendant Harpe personally liable based on understaffing in ODOC facilities, arguing that he was aware of understaffing dangers because he requested additional funding on that basis. *See* Amend. Compl. at 10, 12. But to succeed, Plaintiffs would need to further allege that Defendant Harpe deliberately disregarded the understaffing, *see supra* at 5, and at Plaintiffs' own admission, he did not. As such, the Court again GRANTS Defendants' motion to dismiss and DISMISSES this allegation against Defendant Harpe. *See, e.g., McDowell v. Brown*, 392 F.3d 1283, 1291 (11th Cir. 2004) (holding that plaintiff "cannot rely on a generalized policy of understaffing," as the defendant must "have a 'deliberate intent' to inadequately staff the [correctional facility]"); *Humphrey v. Hall*, No. 22-60227, 2023 WL 2706830, at *1 (5th Cir. Mar. 29, 2023) (noting that plaintiff's own allegations "showed that [the defendant] was not indifferent to the staffing problem, [and] instead was taking active measures to abate it by requesting more money from the state legislature"); *Presley v. Smith*, No. CIV.A.07-0580-KD-M, 2008 WL 3911251, at *5 (S.D. Ala. Aug. 21, 2008) (holding that "even if more officers were needed at the Detention Center, Presley's argument that Sheriff Smith was deliberately indifferent to the need for additional staffing is undercut by the uncontested evidence that Sheriff Smith was consistently seeking more funding for additional staff").

However, Plaintiffs alleged that the ODOC Director had "direct knowledge" "that inmates, including Ross, were being unlawfully detained beyond their lawful discharge dates" but "intentionally failed to implement remedial measures to rectify systemic deficiencies in record-keeping and inmate discharge processes." Amend. Comp. at 16. Taken as true, this allegation

states a valid claim against Defendant Harpe based on his exercise or control and Defendants' motion to dismiss this claim is DENIED.

Finally, the Court agrees with Defendants that Plaintiffs' other allegations relating to alleged unconstitutional customs and/or practices within ODOC, including vague references to inadequate classification systems, are too conclusory to state a valid claim against Defendant Harpe. *See id.* at 7, 11, 16, 18.

### b. Defendant Quick

Turning to Defendant Quick, the Court again agrees with Defendants that Plaintiffs' vague allegations relating to alleged unconstitutional customs and/or practices within OSP, including references to inadequate classification systems, are too conclusory to state a valid claim against Defendant Quick. *See id.* at 7, 11, 16, 18. These claims are DISMISSED without prejudice.

However, Plaintiffs allege that Defendant Quick had actual knowledge that non-violent inmates were being housed with violent offenders as punishment and "failed to correct this dangerous custom." Amend. Compl. at 12. This allegation sufficiently states a valid claim that Defendant Quick knew of and deliberately disregarded an excessive risk to Ross's health and safety and thus the motion to dismiss this claim is DENIED.

### 3. Failure to Supervise/Train

### a. Failure to Supervise

For their failure to supervise theory, Plaintiffs must set forth sufficient facts to show that Defendants caused Ross's constitutional injuries by failing to supervise ODOC employees with "deliberate indifference" to those alleged injuries. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010).

For Defendant Harpe, dismissal is again warranted under a failure to supervise theory. That is, Plaintiffs' allegations that Defendant Harpe "knowingly failed to adequately train, supervise, and control [his] subordinate personnel," or that conduct occurred "under the supervision and authority of Defendant[] Harpe," Amend. Compl. at 13, 15, are too conclusory to state a valid claim against Defendant Harpe in his individual capacity. *See Brashear v. Bd. of Cnty. Commissioners of Oklahoma Cnty.*, 402 F. Supp. 3d 1279, 1286 (W.D. Okla. 2019); *Burris v. Oklahoma, ex rel., Oklahoma Dep't of Corr.*, No. CIV-13-867-D, 2014 WL 442154, at *6 (W.D. Okla. Feb. 4, 2014) (holding that plaintiff used all the relevant catchphrases but without sufficient facts about the lack of training, supervision, or policies, such allegations were too conclusory to state an affirmative link between the alleged violations and the supervising officer); *Affordable Bail Bonds, Inc. v. Tulsa Cnty. Sheriff's Off.*, No. 14-CV-332-JED-FHM, 2019 WL 1983252, at *3 (N.D. Okla. May 3, 2019) ("Plaintiffs' . . . conclusory allegation concerning Glanz's failure to sufficiently monitor and supervise those empowered by the badge and rank bestowed upon them is insufficient to show that Glanz's own conduct plausibly caused any constitutional deprivation." (cleaned up)).

The Court finds likewise for Plaintiffs' conclusory claims that conduct occurred under Defendant Quick's "supervision and authority." Amend. Compl. at 15-16. However, the Court finds Plaintiffs stated a valid claim against Defendant Quick for her alleged failure to supervise OSP staff on proper classification and safety protocols. *See* Amend. Compl. at 9. For this claim, the Court DENIES the motion to dismiss.

        **b.**    **Failure to Train**

A § 1983 claim "is at its most tenuous where a claim turns on a failure to train." *Valdez v. Macdonald*, 66 F.4th 796, 811 (10th Cir. 2023) (cleaned up). To state a plausible claim based on

a failure to train, Plaintiffs must allege facts that raise a plausible inference that Defendants acted with deliberate indifference. *See id.* at 815. "A deliberate indifference claim may be based on a single incident when the need for training can be said to be so obvious, that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id.* (cleaned up).

Defendant Harpe is identified as the then-ODOC Director, and the alleged violations occurred at OSP. Plaintiffs generally allege that Defendant Harpe is responsible for ODOC staff, but they "failed to offer a single factual allegation suggesting that he, as ODOC Director, trains or supervises [OSP] employees or officials. This is fatal to their claims." *Saldivar v. Oklahoma Dep't of Corr.*, No. CIV-24-442-PRW, 2025 WL 2427789, at *7 (W.D. Okla. Apr. 30, 2025), *adopted in relevant part*, 2025 WL 1938373 (W.D. Okla. July 15, 2025). Indeed, the Tenth Circuit has held that its "cases make clear that failure to supervise [or train] is only actionable under § 1983 against a defendant who had a duty to supervise [or train]." *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006).

The analysis is different for Defendant Quick, the OSP Warden. That is, while Plaintiffs did not *specifically* state that Defendant Quick had a duty to train officials, she is the OSP Warden. And Plaintiffs identify specific deficiencies in OSP staff training which allegedly led to the violations at that facility. *See* Amend. Compl. at 14-15. Thus, the Court finds that at this stage, Plaintiffs have stated a valid claim for relief against Defendant Quick based on her failure to train.

    **4.    Summary**

In sum, the Court finds that Plaintiffs have stated valid claims for relief against Defendant Harpe that he (1) was personally aware of Ross's requests for protection and was deliberately indifferent to the same, (2) was personally aware that Ross was being illegally detained and failed to take any corrective action, and (3) had direct knowledge that inmates, including Ross, were

being detained past their discharge dates and failed to implement any remedial measures. All other claims against Defendant Harpe are DISMISSED without prejudice.

For Defendant Quick, the Court finds that Plaintiffs have stated a valid claim that in her individual capacity, she (1) authorized Ross's placement in Harris's cell with deliberate indifference, (2) intentionally ignored Ross's requests for protection with deliberate indifference, (3) knew that OSP had a custom of housing non-violent offenders with violent offenders as punishment and failed to take any curative action, (4) failed to supervise OSP staff related to proper classification and safety protocols, and (5) failed to train OSP staff. Additionally, because Defendants did not address it, Plaintiffs' claim that Defendant Quick failed to follow proper protocols following Ross's death, *see* Amend. Compl. at 11, also survives. All other claims against Defendant Quick are DISMISSED without prejudice.

### 4. Qualified Immunity

As it relates to the § 1983 claims, Defendants urge their entitlement to qualified immunity. *See* Defs.' Mot. at 19-21. The motion to dismiss is DENIED on this basis.

"On a motion to dismiss based on qualified immunity, the ultimate question is whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (cleaned up). Although Defendants provide the Court with almost two full pages of authority, their substantive argument rests only on whether Plaintiffs stated a constitutional claim against either Defendant Harpe or Quick. *See* Defs.' Mot. at 21 ("Plaintiffs cannot meet their burden of demonstrating that any of the named Defendants violated Ross'[s] constitutional rights. Therefore, Defendants are entitled to qualified immunity."). As discussed however, Plaintiffs have stated valid constitutional claims for relief

against both Defendants, *see supra* at 11-12, and thus the Court DENIES Defendants' motion to dismiss based on qualified immunity.

### B.     Plaintiffs' State Law Claims

Plaintiffs bring state law claims for negligence, wrongful death, intentional infliction of emotional distress, and negligent infliction of emotional distress.  *See* Amend. Compl. at 19-23.  Relevant here, Defendants Harpe and Quick seek dismissal under the OGTCA.

The OGTCA "provides the exclusive remedy for an injured plaintiff to recover against [an Oklahoma] governmental entity in tort."  *Higginbottom v. Mid-Del Sch. Dist.*, No. CIV-15-1091-D, 2016 WL 951691, at *3 (W.D. Okla. Mar. 9, 2016).  To begin, a plaintiff must first give notice to "the state or political subdivision."  Okla. Stat. tit. 51, § 156(A) (cleaned up).  This notice is "a mandatory prerequisite jurisdictional requirement to filing a claim for tort damages," and must "be completed prior to the filing of any pleadings."  *Neal v. Sheriff of Canadian County, et al.*, No. CIV-24-643-PRW, 2025 WL 561420, at *10 (W.D. Okla. Feb. 20, 2025) (cleaned up).  Once notice is given, "compliance must be specifically alleged by a claimant in the complaint."  *Id.* (collecting cases); *Schauf v. The GEO Grp.*, 439 P.3d 442, 446 (Okla. Civ. App. 2018) ("A petition which fails to allege compliance with the notice provisions of § 157 is subject to dismissal."); *see also Parker v. Universal Prot. Serv., LP*, No. 25-CV-68-JFH-MTS, 2025 WL 1490062, at *6 (N.D. Okla. May 23, 2025) ("Plaintiff's failure to allege compliance with the OGTCA renders her negligence claim against Allied subject to dismissal."); *Martinez, Next Friend of N.M. v. Ryel*, No. CIV-20-0833-F, 2020 WL 6555946, at *9 (W.D. Okla. Nov. 6, 2020) (holding that "a party . . . who asserts a claim against a political subdivision . . . must allege either actual or substantial compliance with the notice and other requirements of the OGTCA to avoid dismissal of such state-law tort claims").

Defendants assert Plaintiffs' failure to allege that compliance. *See* Defs.' Mot. at 24. Although Plaintiffs explain in their Response that they did comply with the OGTCA, *see* Pls.'s Resp. at 22-23, the Court agrees that compliance is not alleged in the Amended Complaint and thus the state law claims are DISMISSED without prejudice.[5]

## IV. Conclusion

Based on the foregoing, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Specifically, the Court DENIES the motion to dismiss on Plaintiffs' § 1983 claims that Defendant Harpe (1) was personally aware of Ross's requests for protection and was deliberately indifferent to the same, (2) was personally aware that Ross was being illegally detained and failed to take any corrective action, and (3) had direct knowledge that inmates, including Ross, were being detained past their discharge dates and failed to implement any remedial measures. For all other § 1983 claims against Defendant Harpe, the motion to dismiss is GRANTED and the claims are DISMISSED without prejudice.

For Defendant Quick, the Court DENIES the motion to dismiss on Plaintiffs' § 1983 claims that she (1) authorized Ross's placement in Harris's cell with deliberate indifference, (2) intentionally ignored Ross's requests for protection with deliberate indifference, (3) knew that OSP had a custom of housing non-violent offenders with violent offenders as punishment and failed to take any curative action, (4) failed to supervise OSP staff related to proper classification and safety protocols, and (5) failed to train OSP staff. Additionally, because Defendants did not address it, Plaintiffs' claim that Defendant Quick failed to follow proper protocols following

---

[5] Based on this finding, the Court declines to address Defendants' remaining arguments related to the state law claims.

Ross's death also survives.  For all other § 1983 claims against Defendant Quick, the motion to dismiss is GRANTED and those claims are DISMISSED without prejudice.

Finally, the state law claims against both Defendants Harpe and Quick are DISMISSED without prejudice.

Defendants' initial motion to dismiss [Doc. No. 17] is DENIED as moot.

IT IS SO ORDERED this 15th day of January, 2026.

_____
BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE